# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------- X

DEBBIE DALLAS and DEX SERVICES,
LLC,

                Plaintiffs,

          -against-

GALA RESOURCES, LLC, ALAN
HABERMAN personally, AARON
ZIEGELMAN personally, **RAPHAEL
COHEN personally, CARNEGIE
CAPITAL CORPORATION, LINDA
FUNDING, LLC, BENJAMIN
FUNDING CORP., CLAUDIA
FUNDING CORP., MILLPOND
FUNDING, LLC, JOHN DOES 1-20,
ABC CORP. 1-20,**

                Defendants.

---------------------------------------------------- X

Index No.: 11363/05

Date Purchased: August 15, 2005

**AMENDED
VERIFIED COMPLAINT**

NEW YORK
COUNTY CLERKS OFFICE

SEP 12 2005

NOT COMPARED
WITH COPY FILED

        Plaintiffs, by their attorneys, **PICILLO CARUSO O'TOOLE, P.C.,** complaining of the

Defendants, as and for its amended verified complaint, sets forth and alleges, upon information

and belief, as follows:

<u>JURISDICTIONAL FACTS</u>

    1.      That at all times herein mentioned, Plaintiff, DEX SERVICES, LLC, ("Dex") has

been a domestic corporation organized and existing under and by virtue of the Laws of the State

of New York.

    2.      That at all times herein mentioned, Plaintiff, DEBBIE DALLAS ("Dallas"), is a

principal of DEX SERVICES, LLC

3.      That at all times herein mentioned, Defendant, GALA RESOURCES, LLC

("Gala"), was a domestic corporation organized and existing under and by virtue of the Laws of

the State of New York and with offices located in New York County, New York City.

4.      That at all times defendants ALAN HABERMAN ("Haberman") personally,

AARON ZIEGELMAN ("Ziegelman") personally and RAPHAEL COHEN ("Cohen")

personally were principals, officers, directors and/or brokers of Defendant Gala.

5.      That at all times herein mentioned, Defendant, CARNEGIE CAPITAL

CORPORATION ("Carnegie"), was a domestic corporation organized and existing under and by

virtue of the Laws of the State of New Jersey with offices located in Union City, New Jersey.

Upon information and belief, Carnegie is a financial entity that is related to or otherwise operates

in conjunction with Defendant Gala and, upon information and belief, is an alter ego of said

Defendant or of Defendants Haberman and Ziegelman.

6.      Upon Information and belief LINDA FUNDING, LLC. ("Linda"), BENJAMIN

FUNDING CORP. ("Benjamin"), CLAUDIA FUNDING CORP. ("Claudia"), and MILLPOND

FUNDING. LLC. ("Millpond") are residents, corporations, partnerships and limited liability

companies of the State of New York.  Upon information and belief, these businesses are entities that

operate in conjunction with, or are owned and operated by principles of Defendant Gala and, upon

information and belief, are alter egos of said Defendant or of Defendants Haberman and Ziegelman.

7.      From approximately March 15, 2004 until January 15, 2005, Plaintiff Dallas was

an independent contractor working with Defendant Gala.

8.      Throughout Plaintiff Dallas' association with Gala, her ultimate supervisors were

defendants Haberman and Ziegelman who were senior executives responsible for setting and

implementing Gala company policy.

9.     Jurisdiction is appropriate in the State of New York based upon the fact that the Plaintiffs and Defendants conduct business in the State of New York, have offices in the State of New York, and that some or all of the actions complained of took place in the City of New York, State of New York.

## STATEMENT OF FACTS

10.     During Plaintiff Dallas' association with Gala as a research assistant, she had minimal contact with Gala's client lists and such information as may have been available at that time was limited and is now more than seven months old; considered stale in the dynamic and constantly changing world of mortgage financing.

11.     Plaintiff Dallas did not remove any information or property from the Gala offices.

12.     Over a period of months prior to termination of Dallas' association with Gala in January 2005, Defendant Haberman frequently targeted Dallas with crude sexual remarks, including a statement that his tie matched his underwear with a suggestion that [she] personally verify this assertion.

13.     Defendant Haberman also found plaintiff Dallas' name fascinating and engaged in long running and publicly vocal form of sexual word play with it.

14.     Plaintiff Dallas terminated her relationship with Gala in January 2005, following a severe reduction in her work hours and a realization that her complaints regarding sexual harassment and hostile work environment were being ignored.

15.     At all relevant times. Defendants Haberman and Ziegelman were and are senior Gala executives exercising direct hands-on management of the operations of Gala and dictating the direction of Gala's business activities.  Haberman also wears a variety of "hats" in several

3

related businesses, including Defendants Linda Funding, LLC, Benjamin Funding Corp., Claudia Funding Corp., Millpond Funding, LLC.

16.    For example, Haberman is a Partner and President or Vice President of Carnegie a "lender" that pays service fees to Gala.

17.    Plaintiff Dallas' current business partner, Arepoi "Rhea" Stathatos ("Stathatos"). is a former Gala/Carnegie/Benjamin/Claudia/Millpond employee.

18.    Haberman and Ziegelman were Stathatos' supervisors when she worked at Gala.

19.    Defendant Ziegelman has evidenced. on several occasions, actual malice toward Dallas. telling her to her face, in front of other Gala employees. that "I don't like your fucking attitude."

20.    Defendant Haberman later told Plaintiff Dallas' male friend that he "should get a medal for putting up with me."

21.    Defendant Raphael Cohen ("Cohen") is or was a Gala broker who took direction from Haberman and Ziegelman and acted tortiously upon his own initiative.

22.    On or about August 2005, more than seven (7) months after the termination of her relationship with Gala, Plaintiff Dallas received a letter from Gala's counsel (Exhibit A, annexed).

23.    Exhibit A is a tangible manifestation of Defendants' program and policy intended to interfere with Plaintiffs' abilities to earn a living and as retaliation against Dex Services co-owner Arepoi "Rhea" Stathatos for her role as a Plaintiff in a lawsuit pending in New Jersey seeking damages from Defendants.  Other actions include:

4

A.      Improper Customer Contacts

(1)      Gala, through one of its brokers, Defendant Cohen, has engaged in a systematic series of contacts with Plaintiffs' clients to whom they have made false and misleading and libelous statements regarding Plaintiffs in an attempt to discredit Plaintiff Dallas and Dex Services, LLC, and to interfere with Plaintiffs' ability to earn a living.

(2)      Upon information and belief, such contacts were at the direction of Gala management and, more specifically, Defendants Haberman and Ziegelman.

(3)      Within the last three months, plaintiff Dallas had attempted to market mortgage financing to Adaeza Agu ("Agu"), a principal of Grace Homes, LLC, 35-50 White Plains Road, Bronx, NY 10466.

(4)      Agu was identified as a prospective client through a search of public records. A filed copy of a mortgage loan, available to any member of the public, shows a loan issued by Defendant Linda Funding, LLC (a Gala lender). This is associated with a recorded mortgage in Bronx County dated September 17, 2004, document ID number 2004032400372002: 14 pages, entitled "Mortgage." Page 9 of the mortgage bears Ms. Agu's signature as a managing member.

(5)      Following Plaintiff Dallas' identification of Agu as a prospective customer, a meeting was scheduled to present a business proposal.

(6)      On the morning of scheduled meeting, Plaintiff Dallas called Agu on the phone and was informed by Agu that she had spoken to a broker at Gala, who told her that Plaintiff Dallas' attempted contact was in violation of the law.

(7)      Although Plaintiff Dallas explained to Agu how she was located and that such actions were in no way illegal, Agu declined to do business with Dallas.

(8)     Other clients have also informed Plaintiffs of having been contacted within the last three months by Defendant Cohen who reported to them that Plaintiff Dallas was engaging in illegal conduct by contacting them.

B.     The Stathatos lawsuit

(1)     Ms. Stathatos is a plaintiff in a lawsuit entitled Rhea Stathatos, et al vs. Carnegie Capital Corporation, A Corporation of The State of New Jersey, Aaron Ziegelman, individually, Alan Haberman, individually, Linda Haberman, individually, Robert Goldenberg, individually, Gala Resources, LLC, Linda Funding, LLC, Benjamin Funding Corp., Claudia Funding Corp., Millpond Funding, LLC., Haberman & Goldenberg, LLP, The Ziegelman Foundation, pending in the Superior Court of New Jersey, Law Division, Hudson County, Docket Number HUD-L-51-05. (copy annexed hereto as Exhibit B): ("the Stathatos matter" hereinafter).

(2)     The Stathatos matter is a lawsuit seeking damages for gender and race-based discrimination under New Jersey's Law Against Discrimination and other prohibited employment practices.

(3)     Gala together with several of its principals and related financial entities are parties in the Stathatos matter.

(4)     Stathatos, although employed directly by Gala Resources, LLC, provided services to, among others, Defendant Carnegie, Linda, Benjamin, Claudia and Millpond.

24.     Upon information and belief, the Defendants are engaging in this campaign against Plaintiff Dallas and Dex Services, LLC in an attempt to harm and discredit Plaintiff Dallas and her partner, Stathatos, and destroy their ability to earn a living and to prevent them from competing with the defendants in the business of placing mortgage financing.

6.

## FIRST COUNT
## INJURIOUS FALSEHOOD

25.     That on or about August 3, 2005, Defendants did publish false, misleading and defamatory information regarding Plaintiffs and did begin a campaign to discredit Plaintiffs' integrity and ability to conduct business.

26.     Said published information consisted of false accusations of illegal actions and violations of laws, as well as false allegations of theft of proprietary information. Additionally, Defendants telephoned several of Plaintiffs' business contacts and informed those people that it was illegal to do business with Plaintiffs.

27.     Said information was false and was published and uttered intentionally and recklessly and without regard to its consequences upon Plaintiffs.

28.     A reasonably prudent person should have anticipated that the above information would have damaged Plaintiffs.

29.     As a result of this information, Plaintiffs were damaged through the loss of business with said clients. One client, who wishes to remain unnamed, has decreased the amount of business it conducts with Plaintiffs. The other potential client, Adaez Agus, has decided not to conduct business with Plaintiffs based on Defendants' false representations.

## SECOND COUNT
## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC RELATIONS

30.     Plaintiffs incorporate by reference paragraphs 1 through 29, with the same force and effect as though fully set forth at length herein.

31.     But for Defendants' malicious, fraudulent and deceitful acts, Plaintiffs' prospective business relations were damaged.

7

32.     Before Gala's defamatory, discrediting and blatantly false telephone calls, Plaintiffs had an established business relationship with the unnamed client. This client had placed a great deal of business with Plaintiffs. Since the client received the telephone call from Defendants' employee, this client has placed considerably less business with Plaintiffs. Defendants' actions interfered with said business relationship.

33.     Before Gala's defamatory, discrediting and blatantly false telephone calls, Adaeza Agu was a potential client for Plaintiffs and a meeting had been arranged to discuss finalizing the business relationship. Once Adaeza Agu received the telephone call from Defendants, this potential client decided not to place any business with Plaintiffs. Defendants' actions, as noted above, interfered with said potential business relationship.

34.     Defendants acted with the sole purpose of harming Plaintiffs' business and used dishonest, deceitful, defamatory and unfair or improper means to injure Plaintiffs.

35.     As a result of Defendants' actions, Plaintiffs' relationships with the unnamed client and Adaeza Agu have been damaged, in that one has decreased the amount of contracts it typically purchases form Plaintiffs and the other has decided not to finalize the business relationship with Plaintiffs.

## THIRD COUNT
## DEFAMATION

36.     Plaintiffs incorporate by reference paragraphs 1 through 35, with the same force and effect as though fully set forth at length herein.

37.     Defendants' knowingly or recklessly false statements harmed the reputation of Plaintiffs by casting false and unfounded aspersions regarding Plaintiff Dallas' honesty and integrity and the trustworthiness of her business dealings.

8

38.     The specific language used by Defendants, that conducting business with Plaintiffs would be illegal, has a precise meaning and is readily understood to be a tool for dissuading those contacted from doing business with Plaintiffs.

39.     Said language is capable of being proven false, is in fact false, and when viewed in the context in which it was delivered by Defendants, was clearly presented as fact.

## FOURTH COUNT
## PRIMA FACIE TORT

40.     Plaintiffs incorporate by reference paragraphs 1 through 39, with the same force and effect as though fully set forth at length herein.

41.     Defendants intentionally published and uttered false and harmful statements to harm Plaintiffs' business connections and dealings.

42.     Such statements were in fact false and resulted in the damages documented here previously; i.e. loss of clients, decreased business dealings with clients, loss of revenue.

43.     Defendants' actions were without excuse or justification and made out of disinterested malevolence toward Plaintiffs.

## FIFTH COUNT
## RESTRAINT OF TRADE ANTI-TRUST VIOLATION

44.     Plaintiffs incorporate by reference paragraphs 1 through 43, with the same force and effect as though fully set forth at length herein.

45.     Defendants' actions were an attempt to restrain competition and trade in violation of applicable New York State and Federal laws prohibiting such conduct.

WHEREFORE, the Plaintiffs demand judgment against the Defendants as follows:

a)     For an order imposing temporary restraints enjoining Defendants from further defamatory acts;

b)    Compensatory and punitive damages; attorney's fees; interest; costs of suit; and such

other relief as the court may deem equitable and just.

Dated:  Nutley, New Jersey
        September 7, 2005

                                    PICILLO CARUSO O'TOOLE
                                    Attorneys for Plaintiffs
                                    371 Franklin Avenue, P.O. Box 510
                                    Nutley, New Jersey  07110

                                    -and-

                                    303 South Broadway, Suite 222
                                    Tarrytown, New York  10591


                                    Steven A. Weiner

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE, these plaintiffs hereby demand a trial by jury pursuant to New York
C.P.L.R. §4102(a).

                                    PICILLO CARUSO O'TOOLE
                                    Attorneys for Plaintiffs
                                    371 Franklin Avenue, P.O. Box 510
                                    Nutley, New Jersey  07110

                                    -and-

                                    303 South Broadway, Suite 222
                                    Tarrytown, New York  10591


                                    Steven A. Weiner

10

## VERIFICATION

**DEBBIE DALLAS**, affirms the following to be true under penalties of perjury:

I am the Plaintiff in the above captioned matter and a co-owner of DEX SERVICES, L.L.C. I have read the annexed

## SUMMONS and VERIFIED COMPLAINT

and know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matter I believe them to be true. My belief as to those matters therein not stated upon knowledge, is based upon facts, records and other pertinent information contained in my files.

DATED:      New York, New York
            September 1, 2005


                                        _Debbie Dallas_
                                        DEBBIE DALLAS

11

# EXHIBIT A

# Edwards & Angell LLP

51 John F. Kennedy Parkway · Short Hills, NJ 07078 · 973.376.7700 · *fax* 973.376.3380

David N. Cohen, Esq.
Direct Dial: 973-921-5262
E-Mail: dcohen@edwardsangell.com

August 3, 2005

## Via Certified Mail, R.R.R. and Regular Mail

Debbie Dallas
61 Lake Lorain Rd.
Poyntelle, PA 18454

Debbie Dallas
c/o Gregory Sperduto
2 South End Avenue
New York, New York 10280-1062

Re: Gala Resources, LLC

Dear Ms. Dallas:

This firm is counsel to Gala Resources, LLC ("Gala"), for whom you performed services from March 15, 2004 to January 15, 2005.

It has come to our attention that since the termination of your employment with Gala, you have contacted several clients of Gala, with whom you dealt while you worked for Gala, in attempt to secure business. We further understand that when you left Gala's employment, you improperly removed customer information (including customer lists and phone numbers) belonging to Gala.

Gala considers its client information to be confidential and proprietary, and is prepared to take steps to enforce its rights. Accordingly, we ask that you immediately cease and desist from contacting Gala's clients. Moreover, we ask that you immediately return to this office all documents, client lists, client contact information and any other materials belonging to Gala that you removed when you left Gala's employ.

Very truly yours,

David N. Cohen
DNC/cas

cc: Gala Resources, LLC

# EXHIBIT B

**PICILLO CARUSO O'TOOLE**
A Professional Corporation
371 Franklin Avenue, PO Box 510
Nutley, NJ 07110
(973) 667-6000
Attorneys for Plaintiffs,
Rhea Stathatos, Kia Frasier and Lonette
Hopewell

| | |
|---|---|
| RHEA STATHATOS, KIA FRASIER, and LONETTE HOPEWELL, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY DOCKET NO.: HUD-L-51-05 |
| Plaintiff(s), | Civil Action |
| vs. | |
| CARNEGIE CAPITAL CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, AARON ZIEGELMAN, INDIVIDUALLY, ALAN HABERMAN, INDIVIDUALLY, LINDA HABERMAN, INDIVIDUALLY, ROBERT GOLDENBERG, INDIVIDUALLY, GALA RESOURCES, LLC., LINDA FUNDING, LLC., BENJAMIN FUNDING CORP., CLAUDIA FUNDING CORP., MILLPOND FUNDING, LLC., HABERMAN & GOLDENBERG, LLP., THE ZIEGELMAN FOUNDATION, ALL ENTITIES OF THE STATE OF NEW YORK, JOHN DOES 1-20, ABC CORP. 1-20, | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiffs, RHEA STATHATOS, (hereinafter referred to as "Stathatos"), LONETTE

HOPEWELL, (hereinafter referred to as "Hopewell"), and KIA FRASIER (hereinafter referred

to as "Frasier"), by way of Complaint against the defendants, CARNEGIE CAPITAL

CORPORATION, A Corporation of the State of New Jersey, with an address of 4207 Bergenline

Avenue, Union City, New Jersey 07087 AARON ZIEGELMAN, INDIVIDUALLY, ALAN

HABERMAN, INDIVIDUALLY, LINDA HABERMAN, INDIVIDUALLY, ROBERT

GOLDENBERG, INDIVIDUALLY, GALA RESOURCES, LLC., LINDA FUNDING, LLC.,

BENJAMIN FUNDING CORP., CLAUDIA FUNDING CORP., MILLPOND FUNDING, LLC.,

HABERMAN & GOLDENBERG, LLP., THE ZIEGELMAN FOUNDATION, upon information

and belief, residents, corporations, partnerships and limited liability companies of the State of New

York, say as follows:

## BACKGROUND

1.     Defendants were at all times employers as defined under N.J.S.A. 34:19-2, N.J.S.A.

10:5-1, NY Work. Comp. §2(3), NY Exec. Law §292 (5), the doctrine of Joint and/or Borrowed

Employees and pursuant to statutory and common law.

2.     Plaintiff, Hopewell, commenced employment with the defendant, Gala Resources,

LLC., in August 2000, and was terminated on December 20, 2004.

3.     On the date of her termination, Hopewell, was nearly nine months pregnant.

4.     Hopewell is an African American woman and is one of two African American

employees of the defendants.

5.     Plaintiff, Hopewell, performed services for all of the defendants listed above,

including, but not limited to the defendant, Carnegie Capital Corp., with offices in the County of

Hudson, State of New Jersey.

6.     Plaintiff, Hopewell received paychecks from the defendant, Gala Resources, LLC.

7.     Plaintiff, Frasier, was employed by the defendant, Gala Resources, LLC., on

October 18, 2004, and was terminated on December 20, 2004.

8.     Frasier is an African American woman and is one of two African American

employees of the defendants.

9.     Plaintiff, Frasier, performed services for all of the defendants listed above, including, but not limited to the defendant, Carnegie Capital Corp., with offices in the County of Hudson, State of New Jersey.

10.     Plaintiff, Stathatos, was hired in February 1995 and was terminated on November 9, 2004.

11.     Plaintiff, Stathatos, is a woman of Greek descent.

12.     Plaintiff, Stathatos, while being employed directly by Gala Resources. LLC., provided services to all of the defendants, including, but not limited to Carnegie Capital Corporation, with an address of 4207 Bergenline Avenue, Union City, Hudson County, New Jersey.

13.     Upon information and belief Alan Haberman is a Partner and President or Vice President of Carnegie Capital Corporation which conducts business in New Jersey and pays service fees to Gala Resources. LLC., to pay for the services provided by plaintiffs.  Plaintiffs were therefore employees of Carnegie Capital Corporation which does not have any employees.

14.     As the defendants are related entities and the individuals listed are related to the entities. they are responsible for the actions that have caused damage to the plaintiffs.

15.     None of the defendants had in place a personnel manual, sexual harassment policy or an individual to report sexual harassment and/or a hostile work environment to.

16.     Throughout their employment with the defendants, plaintiffs, Hopewell, Frasier and Stathatos, have been subjected to a pattern of discrimination based upon their race, gender, natural origin, and as a result of the plaintiffs' reporting acts of discrimination and wrong doing to the defendants.

17.     The acts of retaliation and discrimination have resulted in the creation of a hostile

work environment and a pattern of hostile and abusive treatment of the plaintiffs.

18.     With regard to the plaintiff, Stathatos, the defendants have conducted and

participated in a conspiracy to ruin her good reputation, to slander and defame her.

19.     Said acts are in violation of statutory and common law.

### FIRST COUNT- RACIAL DISCRIMINATION

1.     Plaintiffs, repeat and reallege all the allegations set forth in the background

section of the Complaint as is set forth at length herein.

2.     Plaintiffs, Hopewell and Frasier are African American women.

3.     Plaintiffs, Hopewell and Frasier were the only African American women

employed by the defendants.

4.     As a result of their race, the plaintiffs were terminated by the defendants.

5.     While employed with the defendants, a pattern of discrimination was evident by

the fact that racially charged jokes concerning African Americans were constant, vulgar and

offensive in the workplace setting.

6.     At times, children were permitted to come to work. This usually occurred around

a holiday. When children were allowed to visit the office where the parents worked, African

American children were prohibited from being visible to clients and customers of the defendants

and defendants demanded they be placed in a back room while white children could freely play

through the entire workplace area.

7.     Plaintiffs, Hopewell and Frasier, were both terminated on December 20, 2004 for

"work-related reasons".

4

8.    The alleged reason for termination was the first time plaintiffs became aware of any problem they had with the employer as they were never advised of any work related issues prior thereto.

9.    Plaintiffs were the subject of discrimination based on their race, as there was a pattern for terminating African Americans, specifically, both African American employees of defendants were terminated on December 20, 2004.

10.    The purported reason for terminating the plaintiffs, Hopewell and Frasier was a ruse and sham.

11.    The acts of the defendants constitute racial discrimination pursuant to statutory, common law and the New Jersey Laws Against Discrimination.

12.    The acts of the defendants constitute racial discrimination pursuant to New York Human Rights Law and New York City Human Rights Law.

13.    The acts of the defendants constitute racial discrimination pursuant to Title VII of the Civil Rights Act of 1964.

WHEREFORE, plaintiffs, Hopewell and Frasier, demand judgment against the defendants jointly and severally for:

a.  Compensatory and punitive damages;

b. Attorney's fees;

c.  Interest;

d. Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT TWO

1.      Plaintiffs, repeat and reallege the allegations set forth in Count One of the Complaint as if set forth at length herein.

2.      Plaintiff, Hopewell, was nearly nine months pregnant when she was terminated on December 20, 2004.

3.      The defendants knew that the plaintiff was scheduled for a cesarean birth on Wednesday, December 29, 2004.

4.      Defendants indicated to plaintiff, Hopewell, when she was terminated that it based upon work related reasons.

5.      Defendants never discussed with the plaintiff, Hopewell, work related issues.

6.      Plaintiff, Hopewell, is of African American descent and was pregnant at the time of her termination and is therefore in a protected class.

7.      The defendants wrongfully terminated plaintiff due to her pregnancy.

8.      The reason given to the plaintiff for termination were ruse and a sham.

9.      The acts of the defendants violate statutory and common law and the New Jersey Laws Against Discrimination for which the plaintiff, Hopewell, has been damaged.

10.      The acts of the defendants violate statutory and common law and the New York Human Rights Law and New York City Human Rights Law for which the plaintiff, Hopewell, has been damaged.

11.      The acts of the defendants violate Title VII of the Civil Rights Act of 1964.

WHEREFORE, plaintiff, Hopewell, demands judgment against the defendants jointly and severally for:

a.      Compensatory and punitive damages;

b. Attorney's fees;

c. Interest;

d. Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT THREE

1.    Plaintiffs repeat and reallege the allegations in Counts One and Two in the Complaint as if set forth at length herein.

2.    As set forth in the Count One of the Complaint, there was a pattern of racial jokes and discrimination against individuals of African American descent.

3.    Specifically, the African American employees were chastised for alleged wrongful acts that were not subject to a written policy while white employees were simply allowed to come and go as they pleased.

4.    The office setting was a place for racially charged and offensive comments.

5.    Despite the plaintiffs' Hopewell, Frasier and Stathatos, requests that this activity cease, it did not.

6.    The actions of the defendants, based upon this activity, created a hostile work environment.

7.    The within acts damaged plaintiffs, Hopewell and Frasier.

**WHEREFORE**, plaintiffs, Hopewell and Frasier, demand judgment against the defendants jointly and severally for:

a. Compensatory and punitive damages;

b. Attorney's fees;

c. Interest;

7

d.  Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT FOUR

1.      Plaintiffs repeat and reallege the allegations of the First, Second and Third Counts of the Complaint as if set forth at length herein.

2.      The plaintiffs were female employees of the defendants.

3.      As a result, plaintiffs are in a protected class.

4.      Office policy required females to punch in and out while males did not.

5.      The office setting was a place for gender based comments which were offensive and vulgar.

6.      Defendants discriminated against the plaintiffs on the basis of their gender.

7.      The acts of the defendants are in violation of statutory and to the common law and New Jersey Laws Against Discrimination and created a hostile work environment.

8.      The acts of the defendants are in violation of the New York Human Rights Law and the New York City Human Rights Law and created a hostile work environment.

9.      The acts of the defendants violate Title VII of the Civil Rights Act of 1964.

**WHEREFORE**, plaintiffs, Hopewell, Frasier and Stathatos, demand judgment against the defendants jointly and severally for:

a.  Compensatory and punitive damages;

b.  Attorney's fees;

c.  Interest;

d.  Costs of suit; and

Such other relief as the court may deem equitable and just.

8

## COUNT FIVE

1. Plaintiffs repeat and reallege the allegations of the First, Second, Third and Fourth Counts of the Complaint as if set forth at length herein.

2. The defendants' extreme and outrageous behavior in the workplace and their disregard of the high degree of probability that damages would follow to the plaintiffs by conducting themselves in an illegal and unlawful pattern of discrimination created a hostile work environment for which the defendants are liable.

3. Specifically as it relates to the plaintiff, Stathatos, Ms. Stathatos constantly complained to defendant, Alan Haberman (who acted in a supervisory role for all plaintiffs), that the defendants were treating female employees in the office with disrespect.

4. Despite demand that this cease, the conduct continued.

5. Defendant, Alan Haberman had always been extremely flirtatious with plaintiff, Stathatos. Said acts included unwanted contact, including but were not limited to unwanted hugging. grabbing and kissing.

6. Defendant, Alan Haberman, constantly made passes at Ms. Stathatos, saying to her on several occasions "I want you baby".

7. The defendant, Alan Haberman, constantly cursed in the office using words such as "fuck, bitch, asshole".

8. Despite demands that this activity cease, the demands were ignored and the illegal activity continued.

9. Defendant, Alan Haberman made constant jokes concerning plaintiff, Stathatos' ethnicity. Defendant, Alan Haberman, made constant jokes concerning diners and Greeks and made unwelcome and uncomfortable derogatory jokes toward her.

9

10.     Despite the request by plaintiff that this activity cease, the jokes continued.

11.     Constant jokes were also made by the defendant, Alan Haberman, concerning African Americans.

12.     This activity included, but was not limited to, Alan Haberman's well-known opinion that "it's their race, they come out of the ghetto and they stay in the ghetto", a statement which he used referring to people of African American descent.

13.     The defendants constantly referred to African Americans as "girls" while referring to Caucasian and Hispanic women as "women".

14.     Defendant, Alan Haberman, would ask plaintiffs, Hopewell and Frasier, if they would like "bananas to eat."

15.     The plaintiffs, Frasier and Hopwell, are the only African Americans employed by defendants.

16.     Defendant, Alan Haberman, was constantly berating plaintiff, Stathatos, about her sex life, as well accusing of her sleeping with a competitor.

17.     Defendant, Alan Haberman, also participated in constant disgusting and demeaning behavior by his viewing of pornographic materials within the work place with an L.E. Titlebaum.

18.     Despite complaints, this activity did not cease.

19.     Defendant, Alan Haberman, also persistently made sexually charged remarks about female visitors in the office.

20.     Defendant, Linda Haberman, encouraged that he participate in the behavior by telling him "go ahead, I know".

21.     Upon information and belief, the statement by defendant, Linda Haberman, "go ahead, I know" was predicated upon the defendant, Linda Haberman's knowledge that defendant, Alan Haberman (her husband) was acting in an inappropriate and unlawful way which she encouraged him to continue.

22.     Defendant, Alan Haberman, was constantly concerned about employees' private lives.

23.     On one occasion, defendant, Alan Haberman asked plaintiff, Stathatos, if an employee was a lesbian since she came alone to office functions.

24.     Defendant, Aaron Ziegelman, acted in a supervisory role to the plaintiffs.

25.     As to the defendant, Aaron Ziegelman, defendant passed out chocolate breasts to all employees and told them "lick them, don't bite them."

26.     Defendant, Aaron Ziegelman, was the source of constant dirty and inappropriate jokes.

27.     Defendant, Aaron Ziegelman, accused plaintiff, Stathatos', mother of sleeping with a competitor and former salesperson of the business.

28.     Defendant, Aaron Ziegelman, accused plaintiff, Stathatos, of sleeping with a competitor and former salesperson of the business.

29.     Defendant, Aaron Ziegelman, performed illegal and wrongful acts by advising the plaintiff, Stathatos, that he was having a private eye following her to see if there was a sexual relationship between her and his competitor.

30.     Defendant, Aaron Ziegelman, constantly caused unwanted and unwelcome touching of plaintiff, Stathatos, by touching and stroking her buttocks.

31.    With regard to the incidents of harassment by the defendant, Aaron Ziegelman, same was reported to defendant, Alan Haberman, who ignored the reports and, as a result, the activity continued.

32.    Defendant, Robert Goldenberg, acted in a supervisory role to the plaintiffs.

33.    Defendant, Robert Goldenberg, scolded the plaintiff, Stathatos, saying that she was "stupid for doing business with Peter".

34.    Upon information and belief, the statement she was "stupid for doing business with Peter", the defendant, Robert Goldenberg, was referring to a competitor who she was allegedly terminated for doing business with.

35.    Defendant, Robert Goldenberg also made false and slanderous statements to Doug Alcott, that plaintiff, Stathatos, and a competitor were sleeping together.

36.    The acts of the defendants, Alan Haberman, Linda Haberman, Aaron Ziegelman and Robert Goldberg were in the course of their employment with the defendants.

37.    Defendants, Amy Ziegelman, Howard Haberman, Jane Ziegelman Coe, and Marjorie Ziegelman, knew of should have known that this activity was occurring at the workplace and did nothing to prevent same.

38.    Defendants violated statutory and common law by their failure to investigate alleged claims of harassment and discrimination.

39.    By the inaction of the defendants, Amy Ziegelman, Howard Haberman, Carnegie Capital Corp., Linda Funding, LLC., Claudia Funding Corp., Haberman & Goldenberg, LLP, Marjorie Ziegelman, Jane Ziegelman Coe, Gala Resources, LLC., Carnegie Capital, LLC., Benjamin Funding Corp., Millpond Funding, LLC., and the Ziegelman Foundation, plaintiffs continued to be subjected to harassment and have been damaged as a result thereof.

**WHEREFORE**, plaintiffs, Hopewell, Frasier and Stathatos, demand judgment against the defendants jointly and severally for:

    a.  Compensatory and punitive damages;

    b.  Attorney's fees;

    c.  Interest;

    d.  Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT SIX

1.    Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth and Fifth Counts of the Complaint as if set forth at length herein.

2.    As discussed above, the defendants harassed plaintiffs during the scope of their employment, causing the working environment to become hostile to the point that a reasonable person would believe the severity of the harassment alternate the conditions of employment.

3.    The defendants knew or should have known of the harassment and failed to take effective measures to stop it.

4.    Defendants, Alan Haberman, Linda Haberman, Aaron Ziegelman, and Robert Goldenberg were give the authority by the remaining defendants in the scope of their employment to continue this pattern of harassment which has caused damage to plaintiffs.

5.    The authority given by defendants to the individuals listed in paragraph 4 above have caused damage to the plaintiffs.

**WHEREFORE**, plaintiffs, Hopewell, Frasier and Stathatos, demand judgment against the defendants jointly and severally for:

    a.  Compensatory and punitive damages;

13

b.  Attorney's fees;

c.  Interest;

d.  Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT SEVEN

1.      Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth and Sixth Counts as if set forth at length herein.

2.      Plaintiff, Stathatos has been subject to defamatory and damaging statements by the defendants.

3.      The defendants, Alan Haberman, Robert Goldenberg and Aaron Ziegelman, have conducted a campaign to damage plaintiff, Stathatos, by making statements to individuals and entities in the financing and legal business which were false, slanderous and damaging.

4.      Specifically, defendants through Robert Goldenberg, advised an outside individual, Doug Alcott, that Stathatos was having sex with a competitor.

5.      The defendants are and have been advising bank institutions and related entities, falsely, that plaintiff, Stathatos, had done "very bad things" which lead to her being terminated from employment.

6.      The actions of the defendants are defamatory and slanderous since they are untrue and create a false impression of the plaintiff.

7.      As a result, plaintiff, Stathatos, has been damaged.

**WHEREFORE**, plaintiff, Stathatos, demands judgment against the defendants jointly and severally for:

a.  Compensatory and punitive damages;

b. Attorney's fees;

c. Interest;

d. Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT EIGHT

1.      Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth, Sixth, and Seventh Counts as if set forth at length herein.

2.      As a result of the defamatory actions committed by the defendants as alleged in Count 7, defendants have caused a tortuous interference with the potential economic benefit to the plaintiff, Strathatos, as her reputation has been tarnished due to the false, slanderous and defamatory statements made by defendants.

3.      As a result, plaintiff, Stathatos, has been damaged.

**WHEREFORE**, plaintiff, Stathatos, demands judgment against the defendants jointly and severally for:

a. Compensatory and punitive damages;

b. Attorney's fees;

c. Interest;

d. Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT NINE

1.      Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eight Counts as if set forth at length herein.

15

2.      Defendants granted to Alan Haberman, Linda Haberman, Aaron Ziegelman, and Robert Goldenberg, the authority to control the working environment.

3.      The defendants, as referred to above, abused that authority by creating a hostile work environment.

4.      The defendants, Amy Ziegelman, Howard Haberman, Carnegie Capital Corporation, Linda Funding, LLC., Claudia Funding Corp., Haberman and Goldenberg, LLP., Marjorie Ziegelman, Jane Ziegelman Coe, Gala Resources, LLC., Carnegie Capital, LLC., Benjamin Funding Corp., Millpond Funding, LLC., and the Ziegelman Foundation, exhibited willful and/or reckless and/or negligent indifference when made cognizant of the plaintiffs' ordeal.

5.      As a result plaintiffs have been damaged.

**WHEREFORE**, plaintiff, Stathatos, demand judgments against the defendants jointly and severally for:

a.  Compensatory and punitive damages;

b. Attorney's fees;

c. Interest;

d. Costs of suit; and

Such other relief as the court may deem equitable and just.

**COUNT TEN**

1.      Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth, Sixth. Seventh, Eighth and Ninth Counts as if set forth at length herein.

2.      Defendants' extreme and outrageous conduct toward plaintiffs disregarded the high degree of frustration and emotional distress that would follow.

3.     Defendants' misconduct and/or negligence caused plaintiffs' emotional distress so severe that no reasonable person can expect to endure it.

4.     As a result, plaintiffs have been damaged.

**WHEREFORE**, plaintiffs, Hopewell, Frasier and Stathatos, demand judgment against the defendants jointly and severally for:

a.   Compensatory and punitive damages;

b.   Attorney's fees;

c.   Interest;

d.   Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT ELEVEN

1.     Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth Ninth and Tenth Counts as if set forth at length herein.

2.     The wrongs committed by defendants, Aaron Ziegelman, Alan Haberman, Linda Haberman and Robert Goldenberg occurred within the scope of their agency and the wrongs were the kind that the agents/servants were employed to perform specifically, supervisors of the plaintiffs.

3.     The wrongs committed occurred within the time and space limits authorized by the defendants.

4.     The wrongs committed by the defendants, Aaron Ziegelman, Alan Haberman, Linda Haberman and Robert Goldenberg, were acted on, in part, to serve the defendants.

5.     As a result, the plaintiffs have been damaged.

**WHEREFORE**, plaintiffs, Hopewell, Frasier and Stathatos, demand judgment against the

17

defendants jointly and severally for:

    a. Compensatory and punitive damages;

    b. Attorney's fees;

    c. Interest;

    d. Costs of suit; and

    Such other relief as the court may deem equitable and just.

### COUNT TWELVE

1.     Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth Ninth, Tenth and Eleventh Counts as if set forth at length herein.

2.     As to the plaintiff, Stathatos, the defendants, acting through defendant, Alan Haberman and defendant, Aaron Ziegelman, retaliated and punished Stathatos for exercising her protected rights by refusing to engage in illegal banking practices.

3.     Specifically, defendants, Alan Haberman, Aaron Ziegelman, and Howard Haberman participated, encouraged and attempted to coerce plaintiff, Stathatos, into fraudulently executing documents for their benefit and encouraged plaintiff, Stathatos, to falsify documents which would be forwarded to banking institutions whom the defendants did business with.

4.     Defendant, Alan Haberman, participated and encouraged Plaintiff Stathatos into forwarding to outside entities closing files which, upon information and belief, contained materially misleading documents not in conformance with standard policy and procedure.

5.     Defendant, Alan Haberman, participated and encouraged Plaintiff, Stathatos, and other employees to participate in loan closing issues which were not in compliance with standard policy and procedure and were thereafter forwarded to financial institutions.

6.      The defendants conspired to retaliate and punish plaintiff, Stathatos, for exercising her moral duty not to participate in such activities and her moral duty to report said activity by terminating her under false pretenses.

7.      Such actions of defendants were in direct violation of the Conscientious Protection Act N.J.S.A. 34:19-1, et seq.

8.      Such actions of defendants were in direct violation of the New York Human Rights Law, NY Exec. Law § 296 and the New York City Human Rights Law, NYC Admin. Code § 8-107(7).

9.      Such actions by the defendants were in direct violation of Title VII of the Civil Rights Act of 1964.

10.      These actions took place during the course of plaintiff, Stathatos`, employment and are independent from other acts of discrimination upon Stathatos.

11.      As a result, these acts of discrimination pursuant to N.J.S.A. 34:19-1 et.seq., NY Exec. Law § 296, NYC Admin. Code § 8-107(7) and Title VII of the Civil Rights Act of 1964, are not subject to the exclusive provisions of same.

12.      As a result, plaintiff, Stathatos, has sustained severe and permanent injuries, great pain and suffering, emotional distress and economic loss, which has caused damage to her.

**WHEREFORE**, plaintiffs, Hopewell, Frasier and Stathatos, demand judgment against the defendants jointly and severally for:

a.   Compensatory and punitive damages;

b.   Attorney's fees;

c.   Interest;

d.   Costs of suit; and

Such other relief as the court may deem equitable and just.

## COUNT THIRTEEN

1.      Plaintiffs repeat and reallege the allegations of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth Ninth, Tenth, Eleventh, and Twelfth Counts as if set forth at length herein.

2.      Plaintiff Hopewell was nearly nine (9) months pregnant when she was terminated on December 20, 2005.

3.      Defendant Haberman agreed to provide plaintiff Hopewell with health insurance coverage through January 31, 2005.

4.      In retaliation to this lawsuit and in an effort to intimidate and control plaintiff Hopewell, Haberman revoked Hopewell's health insurance coverage through January 2005.

5.      Such retaliation is a direct violation of statutory and common law and NY Exec. Law § 296.

**WHEREFORE**, plaintiff, Hopewell, demands judgment against the defendants jointly and severally for:

a.   Compensatory and punitive damages;

b.   Attorney's fees;

c.   Interest;

d.   Costs of suit; and

Such other relief as the court may deem equitable and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to R. 4:35-1, the plaintiffs hereby demand trial by jury as to all issues in the above matter.

20

## DESIGNATION OF TRIAL ATTORNEY

In accordance with R. 4:5-1(c), Juan C. Fernandez is hereby designated as trial counsel

for the plaintiffs in the above matter.

PICILLO CARUSO O'TOOLE
Attorneys for Plaintiffs


JUAN C. FERNANDEZ

Dated:  February 10, 2005

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

The matter in controversy is not the subject of any other action pending in any court or of

a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated

which is presently consolidated with the within matter.  I further certify that I am aware of no

other parties who should be joined in this action at the present time.


PICILLO CARUSO O'TOOLE
Attorneys for Plaintiffs


JUAN C. FERNANDEZ

Dated:  February 10, 2005

21